**WO**

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Troy and Christine Gabaldon,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>City of Peoria, Mr. Juan Gabriel Luera-Harris and Jane Doe Luera-Harria, David Barela and Jane Doe Barela, Charles Kunde and Jane Doe Kunde,<br><br>　　　　　Defendants. | No. CV 12-01612-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiffs' Motion to Enforce Settlement (Doc. 24). Defendants have filed a response (Doc. 25). The parties appeared before the Court for oral argument on this issue on September 25, 2013. The issue before the Court is at what point in negotiating a settlement is a binding agreement reached between the parties.

**I.    BACKGROUND**

On June 25, 2013, the Court entered an order giving Plaintiffs until July 26, 2013, to effectuate service on Defendants. (Doc. 23). On July 2, 2013, without having served Defendants, Plaintiffs' counsel initiated settlement negotiations with Defendants' counsel. (Doc. 24-1). Following numerous offers and counter offers concerning a dollar amount for the settlement only, on July 15, Defendants' counsel sent a letter via email to Plaintiffs' counsel stating "the City has authorized me to make a final offer of $10,000.00 as full settlement of this case.  I expect, given your correspondence, that you will get back to me soon and let us know how you would like to proceed." (Doc. 24-4). Plaintiffs'

counsel immediately emailed Defendants' counsel back and stated, "The Gabaldons accept the offer of $10,000. Please forward a release." (Doc. 24-5). On July 23, Defendants' counsel sent Plaintiffs' counsel an email stating, "Attached please find a draft of the release in the Gabaldon case. Please make any comments, corrections and/or proposed changes." (Doc. 25-1 at 4). Plaintiffs' counsel replied the next day, "Hi Michael: I've lined out confidentiality. I don't believe that is allowable under the open meetings laws and, in any event, it wasn't dickered for. Please take a look." (*Id*.). Over the course of six more emails sent between July 25 and July 26, the parties continued to negotiate the language of the confidentiality clause in the release. (*Id*. at 1-3). Ultimately, the Plaintiffs' counsel ended negotiations and filed the pending motion on July 26. (*Id*. at 1). Plaintiffs did not attempt to serve Defendants after entering into settlement negotiations.

Plaintiffs argue that the case settled on July 15 and that is why they did not attempt to serve Defendants after that date. (Doc. 24 at 5). Plaintiffs request that the Court enforce any agreement that was reached by the terms of emails sent between the parties' attorneys from July 2 to July 25. (*Id*. at 6) (citing the emails between the parties' attorneys Docs. 24-1 through 24-10). Defendants have filed a response and contend that no agreement was reached, only a dollar amount was agreed on, and that the parties were still negotiating terms of the agreement when the deadline for service expired and Plaintiffs filed the pending motion. (Doc. 25).

**II.    ANALYSIS**

    **A.    Settlement Agreement**

"It is well-established that before a binding contract is formed, the parties must mutually consent to all material terms. A distinct intent common to both parties must exist without doubt or difference, and until all understand alike there can be no assent." *Hill-Shafer P'ship v. Chilson Family Trust*, 799 P.2d 810, 814 (Ariz. 1990) (en banc). "A contract may be formed, even if not formally executed, if it is clear the parties intended to bind themselves to the terms." *Johnson Int'l, Inc. v. City of Phx.*, 967 P.2d 607, 611

- 2 -

(Ariz. Ct. App. 1998) (citing *AROK Constr. Co. v. Indian Constr. Servs.*, 848 P.2d 870, 876 (Ariz. Ct. App. 1993); restatement (Second) of Contracts § 27 (1981)). "A manifestation of assent sufficient to conclude a contract is not prevented from doing so because the parties manifest an intention to memorialize their already made agreement in writing." *Rennick v. O.P.T.I.O.N. Care Inc.*, 77 F.3d 309, 313-14 (9th Cir. 1996) (citing Restatement (Second) of Contracts § 27 (1981)). However, "if a party knows that the other intends no obligation to exist until the written agreement is made, the earlier manifestation does not constitute a contract." *Rennick*, 77 F.3d at 314 (citing Restatement (Second) of Contracts § 27 comment b). For a court to enforce the not executed contract, the court must be able to determine that there was a manifestation of mutual assent. *Johnson*, 967 P.2d at 612. Thus, the Court must look to the surrounding circumstances to determine whether the parties intended their non-executed agreement to be immediately effective, or whether the parties intended the agreement would only become binding upon the execution of the written agreement. *Rennick*, 77 F.3d at 314; *see also Johnson*, 967 P.2d at 612.

The question before the Court is whether all material terms were agreed to or not in these circumstances. The Court finds that no settlement agreement was reached for the Court to enforce in this case because the parties did not agree to all material terms of their settlement. The Court's conclusion is first supported by the Restatement. "[L]ike any agreement, a settlement agreement was a type of contract that required manifestation of mutual assent to the material terms of the agreement." Restatement (Second) of Contracts § 1 (1981) (citing *Rachford v. Air Line Pilots Ass'n Int'l*, 375 F. Supp. 2d 908, 937 (N.D. Cal. 2005)). A waiver and release is an essential term of a settlement agreement that cannot be left for future negotiation. *Id.* (citing *Rachford*, 375 F. Supp. 2d at 937) ("here, there was no showing that parties had agreed to any specific form of waiver and release, an essential term of settlement agreement that could not be left for future negotiation.").

As no Arizona court has addressed this exact issue, Plaintiffs argue that the District of Columbia Court of Appeals has held that a confidentiality clause "that was not

1  mentioned prior to coming to terms, [ ] cannot be forced upon an objecting party by later
2  planting it in the settlement agreement." (Doc. 24 at 4) (citing *Dyer v. Bilaal*, 983 A.2d
3  349, 358 (D.C. 2009)).

> In the absence of controlling statutory or case authority, Arizona courts generally follow the Restatement of the Law on a particular subject if its position, as applied to the claim at issue, "is logical, furthers the interests of justice, is consistent with Arizona law and policy, and has been generally acknowledged elsewhere." *Ramirez v. Health Partners of S. Ariz.*, 972 P.2d 658, 665 (Ariz. Ct. App. 1998) (citing *Ft. Lowell–NSS Ltd. P'ship v. Kelly*, 800 P.2d 962 (Ariz. 1990); *Cannon v. Dunn*, 700 P.2d 502, 503 (Ariz. Ct. App. 1985)). Further, Arizona courts routinely look to guidance from courts of other states on matters of first impression. *See, e.g., Tritschler v. Allstate Ins. Co.*, 144 P.3d 519, 527 (Ariz. Ct. App. 2006) (citing *Hull v. DaimlerChrysler Corp.*, 99 P.3d 1026, 1028 (Ariz. Ct. App. 2004)).

*Freeman v. Sorchych*, 245 P.3d 927, 932 (Ariz. Ct. App. 2011), review denied (Aug. 31, 2011). However, in *Bilaal*, the case relied on by Plaintiffs, the parties clearly reached an agreement on the material terms of a settlement agreement before a confidentiality clause was discussed. In that case, the defendants' attorney sent the plaintiffs' attorney an emailed settlement offer that expressly laid out five specific terms of the settlement. *Bilaal*, 983 A.2d at 355-56. Plaintiffs' attorney agreed to these terms and the parties went before the court declaring that they had reached a settlement. *Id*. at 356. Plaintiffs' attorney then read into the record the material terms agreed upon and defendants' attorney did not make any corrections. *Id*. Subsequently, the parties attempted to draft a more comprehensive agreement but disputed whether to include a confidentiality clause. *Id*. After negotiations broke down, plaintiffs filed a motion to enforce the material terms of the settlement agreement. *Id*. The trial court upheld the settlement agreement without the confidentiality clause and the Court of Appeals affirmed, finding that as negotiated the confidentiality clause was not a material term. *Id*. at 358. However, the Court of Appeals made it clear that a confidentiality provision "certainly *could* have been deemed material but neither party referred to confidentiality in the e-mail, in the acceptance, or in open

1  court" when the material terms were again expressed and neither party objected to them. *Id*.

In this case, unlike *Bilaal*, as negotiated the confidentiality clause in the release was a material term. The parties were still clearly engaged in negotiating the terms of the agreement when Plaintiffs filed the pending motion. The parties had merely agreed on a dollar amount and not on the rest of the terms. In *Bilaal*, the circumstances surrounding a binding agreement was much more evident as the parties clearly agreed to material terms, even going so far as to read the specific terms in open court before reducing the agreement to writing. A confidentiality provision was not one of the terms negotiated prior to the parties mutually assenting to their clear duties under the agreement.

In this case, Plaintiffs initiated the settlement negotiations and after agreeing on a dollar amount for settlement, Plaintiffs' counsel took the further step of stating "Please forward a release." (Doc. 24-5). While Plaintiffs' counsel argues this is mundane and not significant as to the lone material term agreed upon in these circumstances, the Court finds this statement by counsel and the result this statement had is quite significant to the negotiation process in this case. Had Plaintiffs' counsel simply replied to Defendants' counsel's email and stated "we accept the offer" he would have a stronger argument that there was a clear and binding agreement.[1] Instead, Plaintiffs' counsel said "Please forward a release" and in so doing, Plaintiffs not Defendants, inextricably tied the release to the agreement and made the release a material term. Even after Defendants' counsel sent the release and complied with Plaintiffs' counsel's request, Plaintiffs could have again simply accepted. However, this is not what happened, Plaintiffs continued to negotiate a vital term of the agreement from their point of view.

---

[1] The Court notes that even with this statement alone, there may still not have been an unambiguous and binding agreement. Defendants' counsel's letter on July 15 stated, "the City has authorized me to make a final offer of $10,000.00 as full settlement of this case." Given the circumstances and the negotiation that ensued, it is clear that "full settlement" meant one thing to Plaintiffs and another thing to Defendants. This cuts against Plaintiffs' argument that a clear agreement was reached between the parties.

- 5 -

In *Bilaal*, the Court of Appeals made it clear that as negotiated the confidentiality clause was not a material term but it "could" have been. 983 A.2d at 358. The circumstances surrounding the negotiation process were determinative to the Court. However, in this case, as negotiated Plaintiffs' counsel made it clear that the confidentiality clause was vital to the overall agreement because Plaintiffs had multiple chances to accept the offer of $10,000 *and* the release, yet they chose not to accept both, they would not accept the release proposed by Defendants, nor did they propose their own language for the confidentiality clause. Plaintiffs negotiated over a term that was important to them. Thus, the Court finds that as negotiated by Plaintiffs in this case, the confidentiality clause was a material term to the agreement and no accord was reached on this term, therefore, no binding settlement was made. The Court finds that the parties' conduct did not manifest mutual assent to the material terms of a contract.

Plaintiffs also argue that public policy requires the settlement to be public and, therefore, the agreement "cannot possibly be confidential." (Doc. 24 at 4). However, this argument is without unpersuasive. The proposed confidentiality clause at issue only pertains to Plaintiffs, not to Defendants. Defendants can still make the agreement public. So Plaintiffs' public policy argument against a confidentiality clause is irrelevant. Plaintiffs are still authorized to make legally compelled disclosures regarding the settlement. The Court finds no binding agreement was reached between the parties and that Plaintiffs did not serve Defendants by July 26, 2013, per the Court's last order. *See* (Doc. 23 at 6).

### B.   Dismissal

Defendants argue that because no settlement agreement was reached and because the deadline for effectuating service has expired, this case should be dismissed. (Doc. 25 at 5). Indeed, Plaintiffs' motion is only for enforcement of a non-existent settlement agreement. Plaintiffs apparently rely solely on their argument for an enforcement of settlement and have not requested a fourth extension of time to serve Defendants in the alternative.

This case began on July 26, 2012, when Plaintiffs filed a complaint (the "Complaint") in this Court alleging two claims under 42 U.S.C. § 1983 against Defendants City of Peoria Police Officer Juan Gabriel, Peoria Police Officer David Barela, and Peoria Police Officer Charles Kunde, and a claim of "municipal liability" against Defendant City of Peoria arising from an incident on July 27, 2010. (Doc. 1). The statute of limitations for Plaintiffs' section 1983 claims is two years. (Doc. 23 at 4 n. 1).

Under Federal Rule of Civil Procedure 4(m), Plaintiffs had 120 days to serve Defendants, which expired at the end of November 2012. Plaintiffs were unable to serve Defendants within this time period. On December 20, 2012, Plaintiffs appeared before the Court to show cause why Defendants should not be dismissed for failure to serve within the time limit. (Doc. 9). At the hearing, the Court held that Plaintiffs had shown good cause why Defendants had not been served and granted Plaintiffs their first extension of time to effectuate service by January 25, 2013. (*Id.*).

On January 24, 2013, Plaintiffs filed for a second extension of time to effectuate service arguing that in light of "the flu epidemic" Plaintiffs should have asked for sixty days when requesting their first extension. (Doc. 11). On January 30, the Court granted Plaintiffs' motion and extended the time for service until February 15, 2013. (Doc. 12).

On February 15, Plaintiffs filed for a third extension of time to effectuate service arguing that the Peoria Police Department and City of Peoria had helped the individual Defendants evade service. (Doc. 19 at 2). Plaintiffs requested that the Court grant one additional week to serve Defendants. (*Id.*). On June 25, the Court granted Plaintiffs' motion and gave Plaintiffs until July 26, 2013, to effectuate service. (Doc. 23 at 6). The Court went on to make it clear in the order that "[*f*]*ailure to serve Defendants by that time will result in the dismissal of all unserved defendants from this case* in accordance with Federal Rule of Civil Procedure 4(m)." (*Id.* at 5) (emphasis in original).

The Court notes that dismissal would bar Plaintiffs from refiling this claim because the statute of limitations for Plaintiffs' claims has expired. However, this case was filed over one year ago and the Court has granted three extensions of time to serve

1  Defendants in this case. Rule 4(m) dictates what the Court must do when a plaintiff fails
2  to serve a defendant. Under this rule, "if a defendant is not served within 120 days after
3  the complaint is filed, the court—on motion or on its own after notice to the plaintiff—
4  must dismiss the action without prejudice against that defendant or order that service be
5  made within a specified time. But if the plaintiff shows good cause for the failure, the
6  court must extend time for service for an appropriate period." Fed. R. Civ. P. 4(m).

7  There are "two avenues for relief[ ]" under Rule 4(m). *Lemoge v. United States*,
8  587 F.3d 1188, 1198 (9th Cir. 2009). "The first is mandatory[.]" *Id*. (citation and
9  footnote omitted). Based upon the plain language of that Rule, "the district court must
10  extend time for service upon a showing of good cause." *Id*. (citation and footnote
11  omitted). "The second is discretionary [.]" *Id*. (citation omitted). Notwithstanding Rule
12  4(m), "if good cause is not established, the district court may extend time for service upon
13  a showing of excusable neglect." *Id*. (citation omitted).

14  "Engaging in the 'two-step analysis' which the Ninth Circuit 'requires[,]' the court
15  will first consider whether on this record there is good cause, thus mandating an extension
16  of time for service under Rule 4(m). *See In re Sheehan*, 253 F.3d at 512. Courts must
17  determine whether good cause 'has been shown on a case by case basis.' *Id*. (citation
18  omitted)." *Trueman v. Johnson*, CIV 09-2179-PHX-RCB, 2011 WL 6721327, at *3 (D.
19  Ariz. Dec. 21, 2011).

20  While Plaintiffs have clearly disregarded the Court's order that they must
21  effectuate service by July 26, Plaintiffs argue that they stopped attempting to serve
22  Defendants on July 15 because they believed a settlement was reached. (Doc. 24 at 5).
23  The Court must determine if this is enough to show good cause. "Good cause to avoid
24  dismissal may be demonstrated by establishing, *at minimum*, excusable neglect."
25  *Trueman*, 2011 WL 6721327, at *3 (quoting *Lemoge*, 587 F.3d at 1198, n. 3) (emphasis in
26  original). In addition to excusable neglect, the record must show that "(a) the party to be
27  served personally received actual notice of the lawsuit; (b) the defendant would suffer no
28  prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed.

*Lemoge*, 587 F.3d at 1198 n. 3 (quoting *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991)). As the Court discussed in the order granting Plaintiffs a third extension of time, the record establishes these last three factors. (Doc. 23 at 4). Thus, the only question is whether Plaintiffs decision to stop attempting to serve Defendants on July 15 is enough to show excusable neglect.

"To determine whether a party's failure to meet a deadline constitutes 'excusable neglect,' courts must apply a four-factor equitable test[ ]" based upon *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd.*, 507 U.S. 380 (1993); and *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997)." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010) (citations omitted). "*Pioneer* involved excusable neglect under Federal Rule of Bankruptcy Procedure 9006(b), and *Briones* involved a Rule 60(b) motion for relief from judgment. The Ninth Circuit applies the *Pioneer/Briones* factors in a variety of contexts, though, including in deciding whether excusable neglect has been shown under Rule 4(m)." *Trueman*, 2011 WL 6721327 at *5 (citing *Lemoge*, 587 F.3d at 1198).

That four factor equitable test requires, at a minimum, examination of: "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Ahanchian*, 624 F.3d at 1261 (citations omitted). These four factors are "not an exclusive list[,]" however. *Lemoge*, 587 F.3d at 1195 (internal quotation marks and citation omitted). "In some circumstances, the prejudice a denial would cause to the movant must also be considered, but it is not a fact that must be assessed in each and every case." *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1092 (9th Cir. 2010) (internal quotation marks and citation omitted). Thus, "what sorts of neglect will be considered 'excusable' . . . is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395.

Mindful that "a district court abuses its discretion if it does not consider each of the four *Pioneer* factors separately[,]" *PLU Investments, LLC v. Intraspect Grp., Inc.*, C10-

626RSL, 2011 WL 1376192, at *2 (W.D. Wash. Apr. 12, 2011) (citing, inter alia, *Ahanchian*, 624 F.3d at 1261), this court will do exactly that. "In so doing, the court is keenly aware that while 'balancing the *Pioneer/Briones* factors,' it 'may not apply per se rules.'" *Trueman*, 2011 WL 6721327 at *6 (citing *Ahanchian*, 624 F.3d at 1261).

### A. Prejudice to the Opposing Party

While Plaintiffs failure to serve has no doubt had some prejudice on Defendants, the Court finds a further extension of time to effectuate service will not unduly prejudice Defendants at this point. "[L]osing the benefit of [the] expiration of the statute of limitations" does "not constitute prejudice within the meaning of Fed.R.Civ.P. 4(m)." *Alamzad v. Lufthansa Consulting GMBH*, C04-01602 RS, 2005 WL 1869400, at *2 (N.D. Cal. Aug. 4, 2005) (citing *Boley v. Kaymark*, 123 F.3d 756, 758 (3rd Cir. 1997)). "While not binding in the Ninth Circuit, this court agrees that *Boley* is persuasive authority for the proposition that the running of the statute of limitations period does not assist [D]efendants in this equitable analysis." *Trueman*, 2011 WL 6721327 at *6 (quotation omitted).

### B. Length of Delay and Impact

The second factor also supports a finding of excusable neglect. While this case has been ongoing for over a year, the case is nowhere near completion nor any type of adjudication on the merits of Plaintiffs' claims.

### C. Reason for Delay

The third factor is the reason for the delay. As explained, Plaintiffs stopped attempting service because they believed a settlement had been reached on July 15. However, as explained above, no settlement was reached and Plaintiffs chose to rely on the strength of their argument for a settlement as a valid reason to ignore the Court's order to serve Defendants by July 26. While Plaintiffs' argument that a binding settlement was reached is unpersuasive, the Court finds Plaintiffs' genuine belief that they had a binding settlement was not unreasonable and a valid enough reason for the delay to support a finding of excusable neglect.

### D. Good Faith

Turning to the fourth factor, there is no basis for concluding that Plaintiffs acted in bad faith, or were engaging in gamesmanship, as opposed to simply being dilatory. Therefore, this factor likewise favors Plaintiffs.

### E. Severe Prejudice to Plaintiffs

Finally, as discussed, dismissing Plaintiffs' complaint now would mean that the statute of limitations bars re-filing. Another judge in this Court has addressed this very issue.

> Under these circumstances, the Ninth Circuit has "expanded the scope of the 'prejudice' inquiry when conducting analysis under Rule 4(m) to include the prejudice that would be suffered by a plaintiff in the event of a dismissal for failure to timely serve[.]" *Lemoge*, 587 F.3d at 1195. Indeed, the Ninth Circuit has expressly recognized that "[t]he district court's discretion is not diminished when the statute of limitations would bar re-filing of the suit if the district court decided to dismiss the case instead of grant an extension." *Mann*, 324 F.3d at 1090. "To the contrary, the advisory committee notes explicitly contemplate that a district court might use its discretion to grant an extension in that very situation: 'Relief may be justified, for example, if the applicable statute of limitations would bar the re-filed action.'" *Id*. at 1090–91 (quoting Fed.R.Civ.P. 4, Advisory Committee Note to 1993 Amendments, Subdivision (m)); *see also De Tie v. Orange Cty.*, 152 F.3d 1109, 1111 n. 5 (9th Cir. 1998) (recognizing that an extension may be warranted if the statute of limitations has run).
>
> In fact, the Ninth Circuit has found that plaintiffs sustained "the ultimate prejudice of being forever barred from pursuing their claims [,]" absent a Rule 4(m) "because the statute of limitations on their claim ha[d] run." *Lemoge*, 587 F.3d at 1197. Absent an extension of time to serve, plaintiff [ ] will suffer that same "ultimate prejudice" because presumptively, at this juncture, the two year statute of limitations has run on his section 1983 claim. Consequently, although "[a] dismissal for untimely service is required to be ... without prejudice[,]" *2,164 Watches*, 366 F.3d at 773 (citation omitted), "[t]hat purpose would be frustrated" where, as here, evidently "the statute of limitations has already run[ ]"

> because "a dismissal intended to be without prejudice under Rule 4(m) would essentially be with prejudice." *See Carrillo v. Internal Revenue Service*, 2006 WL 167558, at *4 (D.Ariz. Jan.24, 2006) (citing, inter alia, *2,164 Watches*, 366 F.3d at 773). Thus, "a Rule 4(m) dismissal would effectively cut off Plaintiff's right to redress." *Id*.
>
> The concern that the statute of limitations is a bar to refiling in this case arguably carries even more weight given that "the public policy favoring resolution on the merits is 'particularly important in civil rights cases [ ]' "such as this section 1983 action. *See Hernandez v. City of El Monte*, 138 F.3d 393, 401 (9th Cir. 1998) (quoting *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987)). As is abundantly clear, dismissing the [complaint] for failure to timely serve pursuant to Rule 4(m) would result in not only "severe prejudice" to plaintiff [ ], but in the words of the Ninth Circuit, he would sustain "the ultimate prejudice[.]" *See Lemoge*, 587 F.3d at 1196. Therefore this aspect of the prejudice inquiry heavily weighs in favor of a finding of excusable neglect.

*Trueman*, 2011 WL 6721327 at *7-8. Accordingly, Plaintiffs in this case would suffer the same "ultimate prejudice" as the plaintiff in *Trueman* if the Court did not grant a fourth extension under the circumstances.

Balancing the equities in light of these factors, the Court finds the analysis favors a finding of excusable neglect, particularly in light of the factor of severe prejudice to Plaintiffs. Thus, in the exercise of its discretion, the Court will grant Plaintiffs a fourth extension of time in which to serve Defendants pursuant to Federal Rule of Civil Procedure 4. That extension is not without limits, however.

The Court is fully aware that Plaintiffs have been granted four extensions of time at this point. It is Plaintiffs' responsibility to serve Defendants. The Court's discretion to find excusable neglect and good cause are not limitless, *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007), and Plaintiffs have exhausted virtually all conceivable ways to show either.

### III. CONCLUSION

Based on the foregoing,

1   **IT IS ORDERED** that Plaintiffs' Motion to Enforce Settlement (Doc. 24) is
2   denied.

3   **IT IS FURTHER ORDERED** that Defendant's motion to dismiss (Doc. 25) is
4   denied.

5   **IT IS FINALLY ORDERED** that Plaintiffs shall have until November 1, 2013 to
6   serve Defendants. Proofs of service of each Defendant (showing service by November 1,
7   2013) must be filed no later than November 6, 2013.

8   Dated this 27th day of September, 2013.

*[signature]*
James A. Teilborg
Senior United States District Judge